IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSE GIDDINGS,** | : | |
| **Plaintiff** | : | |
| | : | No. 1:21-cv-01841 |
| v. | : | |
| | : | (Judge Kane) |
| **SINES, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court are motions for summary judgment that have been filed by the remaining defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. Nos. 38, 41.) Also before the Court is a renewed motion to file certain summary judgment documents under seal. (Doc. No. 45.) For the reasons set forth below, the Court will grant the remaining defendants' motions for summary judgment, strike the documents that were filed provisionally under seal, and deny as moot the motion to file those documents under seal.

**I.    BACKGROUND**

Plaintiff Jesse Giddings ("Giddings"), who is proceeding pro se and in forma pauperis, is currently incarcerated as a pretrial detainee at the Lycoming County Prison ("Prison") in Williamsport, Pennsylvania. (Doc. Nos. 1 at 3; 8 at 3.) On October 29, 2021, while Plaintiff was incarcerated there, he brought this action by filing a complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Named as Defendants are the following individuals, all of whom worked at the Prison during the period of time relevant to this action: Correctional Officer Sines ("Sines"); Deputy Warden Ryan Barns ("Barns"); Warden Brad Shoemaker ("Shoemaker"); Lieutenant Harry Entz ("Entz"); Sergeants Cody Beck ("Beck") and Joseph Defransico ("Defransico"); County Commissioners Scott Metzger ("Metzger"), Richard Mirabito ("Mirabito"), and Tony Mussare ("Mussare"); Kim Poorman, RN ("Poorman"); Maelynne Murphy, LPN ("Murphy");

Sheila Lain, LPN ("Lain"); and Shawn P. McGlaughlin, M.D. ("McGlaughlin").  (Doc. No. 1.)[1] On November 15, 2021, the Court issued a Memorandum and Order, which granted Plaintiff leave to proceed in forma pauperis, conducted an initial review of his complaint pursuant to the Prison Litigation Reform Act,[2] and dismissed his complaint for failure to state a claim upon which relief could be granted.  (Doc. Nos. 6, 7.)  However, the Court also granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Id.)

On December 3, 2021, Plaintiff filed his amended complaint.  (Doc. No. 8.)  Named as Defendants are Sines, Barns, Shoemaker, Entz, Defransico, Metzger, Mirabito, Mussare, Murphy, Poorman, Lain, and McGlaughlin, as well as the newly added Defendants, Lieutenant Kennelly ("Kennelly"), Lieutenant Rogers ("Rogers"), and Andrea Hoover, LPN ("Hoover").  (Id. at 1–7.)  On January 4, 2022, the Court issued a Memorandum and Order, which conducted an initial review of Plaintiff's amended complaint pursuant to the PLRA and partially dismissed it for failure to state a claim upon which relief could be granted.  (Doc. Nos. 10, 11.)  Specifically, the Court dismissed, without leave to amend, Plaintiff's claims brought under the Eighth Amendment, as well as Plaintiff's claims brought against Defendants Barns, Shoemaker, Kennelly, Entz, Defransico, Rogers, Metzger, Mirabito, and Mussare.  (Id.)  However, the Court permitted Plaintiff to proceed on his Fourteenth Amendment excessive use of force claim against Defendant Sines and his Fourteenth Amendment failure to provide medical care claims against

---

[1] The Court took the spelling of Defendants' names from their filings and directed the Clerk of Court to make these spelling changes in the caption of the Court's docket.  (Doc. No. 27 at 2 n.1.)

[2] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996) ("PLRA").

2

Defendants Murphy, Poorman, Lain, Hoover, and McGlaughlin. (Id.) As a result, the Court directed service of Plaintiff's amended complaint on these remaining Defendants.[3] (Id.)

Plaintiff, who is currently proceeding on his amended complaint, sets forth the following factual allegations. On September 13, 2021, at around 11:57 a.m., Defendant Sines attempted to kick Plaintiff "in" his face while he was sitting on the floor in his cell. (Doc. No. 8 at 8.) Defendant Sines shouted, "Shut the f*** up n***** before I kill you, f*** your grievance." (Id.) As a result, something from the sole of Defendant Sines' boot flew into his eye. (Id.) Plaintiff asked "multiple officers" to see a nurse, but no one came to his aid. (Id.) Plaintiff also "wrote to sick call," which is comprised of four (4) nurses and one doctor—i.e., Defendants Murphy, Lain, Poorman, Hoover, and McGlaughlin. (Doc. No. 8 at 8.) Despite writing to all of these individuals about his eye injury, and despite them all having "the chance" to address his medical needs, none of them did so. (Id.) Instead, Plaintiff alleges, they all disregarded their jobs by not taking care of his medical needs. (Id.)

In addition, former-Defendants Barns, Shoemaker, Kennelly, Defransico, Entz, and Rogers "all had the chance to help" because they "over see [sic] the entire prison." (Id.) However, Plaintiff asserts that neither the Wardens nor any of the lieutenants "took it upon theirselves [sic] to help [him] or see about [his] situation," even though former-Defendants Barns and Shoemaker "are the first and second step of the [i]nmate [g]rievance process[.]" (Id.) In seeming support of this assertion, Plaintiff alleges that: he submitted a grievance to former-Defendant Barns, the Deputy Warden, on September 13, 2021; he subsequently appealed the denial of that grievance to former-Defendant Shoemaker, the Warden, on October 3, 2021, who,

---

[3] The Court refers collectively to Defendants Hoover, Poorman, Murphy, Lain, Sines, and McGlaughlin as "Defendants" or "remaining Defendants."

3

in turn, denied his appeal. (Id. at 9.) Plaintiff also alleges that the last step of the grievance process is to appeal to the County Commissioners, namely, former-Defendants Metzger, Mirabito, and Mussare. (Id.) Plaintiff does not specify whether or not he filed an appeal to the "last step of the grievance process" or, if he did, when he did so.

Based upon all of these allegations, Plaintiff asserts violations of his constitutional rights under the Fourteenth Amendment to the United States Constitution.[4] (Id. at 10.) In addition, he claims that his right eye "continues to get blurry" and that he is "constantly getting migrain [sic] headace [sic]." (Id.) For relief, Plaintiff seeks monetary damages as well as for Defendant Sines to be fired "so that this same thing [does not] happen to any other [i]nmates." (Id.)

On March 3, 2022, Defendant McGlaughlin filed a motion to dismiss Plaintiff's amended complaint (Doc. No. 22), followed by a supporting brief (Doc. No. 25). Shortly thereafter, on March 7, 2022, Defendants Hoover, Poorman, Murphy, and Lain also filed a motion to dismiss Plaintiff's amended complaint (Doc. No. 23), followed by a supporting brief (Doc. No. 26). On that same date, Defendant Sines filed an answer with affirmative defenses to Plaintiff's amended complaint. (Doc. No. 24.) As reflected by the Court's docket, Plaintiff did not file any responses to the motions to dismiss.

By Memorandum and Order dated on July 20, 2022, the Court denied the motions to dismiss and directed Defendants Hoover, Poorman, Murphy, Lain, and McGlaughlin to file an answer to Plaintiff's amended complaint within twenty-one (21) days. (Doc. Nos. 27, 28.) The Court also instructed the parties to complete discovery within seven (7) months and to file dispositive motions within sixty (60) days of the close of discovery. (Id.) In accordance with the

---

[4] As set forth above, Plaintiff's Eighth Amendment claims have been dismissed from this action. (Doc. Nos. 10, 11.)

4

Court's Memorandum and Order, Defendants Hoover, Poorman, Murphy, and Lain filed an answer with affirmative defenses on August 3, 2022 (Doc. No. 29), and Defendant McGlaughlin filed an answer with affirmative defenses one week later on August 10, 2022 (Doc. No. 30). The parties then engaged in discovery, and Plaintiff's deposition occurred on March 15, 2023. See, e.g., (Doc. No. 43 at 37–101).

Following an extension of the discovery period in this matter, see (Doc. No. 34), the remaining Defendants filed their motions for summary judgment (Doc. Nos. 38, 41), along with supporting briefs (Doc. Nos. 48, 49), statement of material facts (Doc. Nos. 39, 42), and corresponding exhibits (Doc. Nos. 40, 43, 44, 46). As reflected by the Court's docket, Plaintiff did not file any responses to the motions for summary judgment or seek an extension of time in which to do so. In addition, Defendants Hoover, Lain, Murphy, Poorman, and Sines filed a motion to file certain summary judgment documents under seal. (Doc. No. 35.)

On May 25, 2023, the Court denied, without prejudice, Defendants Hoover, Lain, Murphy, Poorman, and Sines' motion to file certain summary documents under seal, explaining that they had failed to address, and satisfy their burden under, In re: Avandia Marketing Sales Practices and Products Liability Litig., 924 F.3d 662 (3d Cir. 2019). (Doc. No. 37.) However, the Court afforded Defendants Hoover, Lain, Murphy, Poorman, and Sines an opportunity to file a renewed motion, if they wished to do so, in order to make the necessary showing under Avandia. (Id.) On June 8, 2023, Defendants Hoover, Lain, Murphy, Poorman, and Sines filed their renewed motion (Doc. No. 45) and a "legal justification" in support thereof (Doc. No. 46). As reflected by the Court's docket, Plaintiff has not responded to their renewed motion or sought an extension of time in which to do so. Accordingly, the parties' pending motions are ripe for the Court's disposition.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. If the nonmoving party "fails to make a showing

Case 1:21-cv-01841-YK-SM   Document 50   Filed 03/14/24   Page 6 of 17

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. If the nonmoving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper. See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]" See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]" See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

**III.    DISCUSSION**

    **A.    PLRA's Exhaustion Requirement**

In their pending motions for summary judgment and supporting briefs, Defendants argue, inter alia, that Plaintiff failed to exhaust available administrative remedies in accordance with the PLRA before asserting his Section 1983 claims in this Court. (Doc. Nos. 38, 41, 48, 49.) The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a) (emphasis added). In other words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions. See Rinaldi v. United States, 904 F.3d 257, 265 (3d Cir. 2018); see also Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more

conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88). And the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ); see also Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . . "); Woodford, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ").

A prisoner's failure to follow these procedural rules will result in a procedural default of his claims. See id. at 230–32 (concluding that the PLRA's exhaustion requirement includes a procedural default component); Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (recognizing this holding in Spruill). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. See Rinaldi, 904

8

F.3d at 266 (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Downey, 968 F.3d at 305 (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

The failure to exhaust available administrative remedies is an affirmative defense.  See Jones, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi, 904 F.3d at 268 (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  See id. (citation omitted).

Finally, requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added)); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

B.      **Material Facts**[5]

In accordance with the Court's Local Rules, see M.D. Pa. L.R. 56.1, Defendants filed their respective statements of material facts and exhibits in support of their pending motions for summary judgment. (Doc. Nos. 39, 40, 42, 43.) Plaintiff, however, did not file his own statements of material facts, responding to the numbered paragraphs set forth in Defendants' statements. Thus, under the Court's Local Rules, Defendants' facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial.' [Celotex Corp. v. Catrett, 477 U.S. 317, 324] (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015) aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (unpublished) (emphasis in original) (citation omitted). Thus, the material facts in this Memorandum are derived from Defendants' statement of material facts. That said, the Court has conducted a thorough and impartial review of the record in this matter and, where necessary, has supplemented the material facts.

The Prison has a grievance policy for which the procedures are outlined in the Inmate Handbook. (Doc. Nos. 39 ¶ 123; 42 ¶ 79.) The Prison's grievance policy contains the following three (3)-step process for the resolution of prisoner grievances: (1) an initial grievance to the deputy warden; (2) an appeal to the warden; and (3) a final appeal to the Prison Board (i.e., the

---

[5] Because Defendants' motions for summary judgment rely upon the same set of facts concerning whether Plaintiff exhausted available administrative remedies, the Court will address their statements of material facts, together, in one section.

county commissioners). (Doc. Nos. 39 ¶ 123; 42 ¶ 80.) Plaintiff signed an acknowledgement form that he received a copy of the Inmate Handbook upon his commitment to the Prison on December 18, 2020. (Doc. Nos. 39 ¶ 124; 42 ¶ 81.) During his deposition, Plaintiff acknowledged signing this form, but denied receiving a copy of the Inmate Handbook. (Doc. Nos. 40 at 22, 40; 43 at 51, 69.) However, Plaintiff conceded that he understood the grievance process at the Prison in September of 2021. (Doc. Nos. 39 ¶ 125; 42 ¶ 82.)

Plaintiff did not submit an initial grievance to the deputy warden on September 13, 2021, or any day thereafter. (Doc. Nos. 39 ¶ 126; 42 ¶ 88.) However, by way of a "Lycoming County Inmate Grievance Form" ("Grievance Form") that is dated September 23, 2021, Plaintiff purported to file an "appeal" of a grievance that he, allegedly, filed on September 13, 2021. (Doc. Nos. 39 ¶ 127; 42 ¶ 83); see also (Doc. No. 43 at 220 (containing this September 23, 2021 Grievance Form wherein Plaintiff explains as follows: "[t]his is a [sic] Appeal to the Grievance I filed on 9/13 that I never got a [sic] answer to or Grievance number")). Plaintiff submitted this "appeal" to the warden (i.e., former-Defendant Shoemaker). (Doc. Nos. 39 ¶ 129; 42 ¶ 84.)

In his September 23, 2021 Grievance Form, Plaintiff alleges that Defendant Sines (identified as "C-O Swain" in the form) kicked "at" Plaintiff's face, which caused "something" from the sole of Defendant Sines' boot to go into Plaintiff's eye. See (Doc. Nos. 39 ¶ 127; 42 ¶ 85; 43 at 220). Plaintiff further alleges that he asked a correctional officer to get a nurse or "medical" for him and that the correctional officer told Plaintiff he had informed Defendant Murphy that Plaintiff needed to see her, but that Plaintiff did not receive any medical attention. See (Doc. Nos. 39 ¶ 127; 42 ¶ 85; 43 at 220–21).

On October 4, 2021, Plaintiff purported to file another "appeal" to the Prison Board via a Grievance Form, which was received by the Prison Board on October 7, 2023. (Doc. Nos. 39 ¶

11

132; 42 ¶ 89.) Shortly thereafter, on October 10, 2021, Plaintiff filed yet another "appeal" to the Prison Board via a Grievance Form. (Doc. Nos. 39 ¶ 133; 42 ¶ 90.) Both of these October 2021 Grievance Forms concern the same allegations as those asserted in the September 23, 2021 Grievance form—i.e., that Defendant Sines kicked "at" Plaintiff's face, causing "something" to go in his eye, and that Plaintiff was subsequently denied medical care. (Doc. Nos. 40 at 195–96, 197–99; 43 at 222–24, 225–26.)

On October 11, 2021, former-Defendant Shoemaker sent Plaintiff a memorandum explaining that his grievance appeal to the Prison Board was denied without prejudice as premature, but that it would be referred to former-Defendant Barns for review as an initial grievance pursuant to the Prison's grievance policy, as outlined in the Inmate Handbook. (Doc. Nos. 39 ¶ 135; 42 ¶ 92.) During his deposition, Plaintiff acknowledged that he received former-Defendant Shoemaker's memorandum and understood that his "appeal" was improperly submitted to the Prison Board and that it would be answered by former-Defendant Barns as an initial grievance. (Doc. No. 39 ¶ 136.)

Because Plaintiff's September 23, 2021 Grievance Form was treated as a new initial grievance, it was assigned a grievance number, i.e., Grievance #2021-78. (Doc. No. 39 ¶ 131.) On October 13, 2021, former-Defendant Barns denied Plaintiff's Grievance #2021-78 on the basis that Plaintiff's claims had no merit. (Doc. Nos. 39 ¶ 137; 42 ¶ 93.) More specifically, former-Defendant Barns stated as follows: "This matter has been reviewed. Your claims have no merit. Additionally, you were seen by medical on two separate occasions since 9/23/21. You did not raise any medical concerns regarding your eye on either occasion. Your grievance is denied." (Doc. No. 43 at 228.) Plaintiff did not appeal former-Defendant Barns' denial to the warden (Doc. Nos. 39 ¶ 140; 42 ¶ 94) or the Prison Board.

C. **Application of PLRA's Exhaustion Requirement**

Here, the record demonstrates that the Prison has an established grievance procedure that is outlined in the Inmate Handbook. (Doc. Nos. 40 at 179–184; 43 at 242–243.) Plaintiff acknowledged that, in September of 2021, he understood the three (3) steps that comprise the Prison's established grievance procedure—that is, (1) an initial grievance to the deputy warden, (2) if the initial grievance is denied, an appeal to the warden, and (3) if the appeal to the warden is denied, a final appeal to the Prison Board. (Doc. Nos. 40 at 40; 43 at 69.)

In connection with this established grievance procedure, Defendants have produced evidence demonstrating that Plaintiff submitted three (3) Grievance Forms relevant to the events asserted, here, in this action. Those three (3) Grievance Forms are the September 23, 2021 Grievance Form (Doc. Nos. 40 at 200–01; 43 at 220–21), the October 4, 2021 Grievance Form (Doc. Nos. 40 at 197–99; 43 at 222–24), and the October 10, 2021 Grievance Form (Doc. Nos. 40 at 195–96; 43 at 225–26). All three (3) of these Grievance Forms allege that: on September 13, 2021, Defendant Sines' "kicked at" Plaintiff's face causing "something" to go into his eye; Plaintiff asked a correctional officer if he could see a nurse or medical; and the correctional officer told Defendant Murphy that Plaintiff needed to see her, but Plaintiff never received any medical attention. Although Plaintiff indisputably filed these three (3) Grievance Forms, Defendants have shown that Plaintiff did not properly complete all three (3) steps of the Prison's grievance procedure with respect to these relevant Grievance Forms.

More specifically, in the September 23, 2021 Grievance Form, identified by Prison staff as Grievance #2021-78, Plaintiff attempted to file a purported "appeal" of a prior grievance. (Doc. Nos. 40 at 200–01; 43 at 220–21.) However, Plaintiff has not produced a copy of such prior grievance, and Defendants have adduced evidence suggesting that no such copy exists. See

13

(Doc. No. 40 at 173). Additionally, before Plaintiff received a response to the September 23, 2021 Grievance Form,[6] he submitted the October 4, 2021 Grievance Form as an "appeal" to the Prison Board. (Doc. Nos. 40 at 197–99; 43 at 222–24.) Again, however, before receiving a response from the Prison Board, Plaintiff filed the October 10, 2021 Grievance Form as an "appeal" to the warden (id. at 70). (Doc. Nos. 40 at 195–96; 43 at 225–26). On October 11, 2021, former-Defendant Shoemaker (the warden) advised Plaintiff that his appeal to the Prison Board was procedurally improper and, thus, would be submitted to former-Defendant Barns (the deputy warden) as an initial grievance at the first step of the Prison's grievance process. (Doc. Nos. 40 at 194; 43 at 227.) Two (2) days later, on October 13, 2021, former-Defendant Barns denied Plaintiff's initial grievance. (Doc. Nos. 40 at 191; 43 at 228.) There is no evidence in the record to suggest that Plaintiff filed an appeal of former-Defendant Barns' denial, pursued any other steps outlined in the Prison's grievance policy following that denial, or filed any other relevant grievances that were fully exhausted in accordance with the Prison's grievance procedure prior to asserting Section 1983 claims in this Court.

    Based upon the evidence of record, the Court concludes that Plaintiff did not comply with the Prison's grievance procedure from the very beginning. Plaintiff never submitted an initial grievance to the deputy warden concerning the events alleged in this action. Instead, Plaintiff filed three (3) appeals, skipping step one of the Prison's grievance procedure each and every time. However, to the credit of Prison officials, they elected to consider substance over form (Doc. No. 49 at 25) and construed Plaintiff's improper appeal as a new initial grievance, and they referred that grievance to step one of the Prison's grievance procedure—i.e., the filing of an

---

[6] As set forth in the Prison's grievance procedure, prison staff has fifteen (15) working days to issue a written response to the inmate at each level of the three (3)-step process. (Doc. No. 43 at 242–43.)

initial grievance with the deputy warden. But, once Plaintiff's initial grievance was denied by the deputy warden, Plaintiff did not file a subsequent appeal to the warden or Prison Board. The Court finds that Plaintiff's failures to do so renders him non-compliant with the second and third steps outlined in the Prison's grievance procedure. See Downey, 968 F.3d at 305 (stating that "[t]he PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules'" (quoting Woodford, 548 U.S. at 88)); Spruill, 372 F.3d at 222 (explaining that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . .").

Additionally, the Court finds that Plaintiff's non-compliance with the Prison's grievance procedure flies in the face of the principles that underlie administrative exhaustion, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." See Jones, 549 U.S. at 219 (citations omitted). Indeed, because Plaintiff did not appeal the deputy warden's denial of his construed-initial grievance to the warden or the Prison Board, these individuals were not afforded the opportunity to consider or respond to Plaintiff's concerns before being haled into federal court.

D. **Conclusions as to Defendants' Motions for Summary Judgment**

Thus, under Rule 56, Defendants have met their summary judgment burden to demonstrate that there is no genuine dispute of material fact that Plaintiff failed to exhaust available administrative remedies prior to asserting his Section 1983 claims in this Court. Under Rule 56, the burden then shifted to Plaintiff who was required to respond by pointing to evidence

in the record to show a genuine dispute of material fact. Plaintiff, who has not filed any response to Defendants' motions for summary judgment, has failed to create such a dispute of fact. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); Fed. R. Civ. P. 56(c); see also M.D. Pa. L.R. 7.6 (instructing that a party who fails to file a brief in opposition to a motion for summary judgment within twenty-one (21) days after service of the moving party's brief "shall be deemed not to oppose such motion"); M.D. Pa. L.R. 56.1 (stating that the moving party's statement of material facts "will be deemed to be admitted unless controverted by" the non-moving party's statement). The remaining Defendants are, therefore, entitled to judgment as a matter of law on the affirmative defense of Plaintiff's failure to exhaust available administrative remedies.

Although Defendants have asserted additional arguments in support of their motions for summary judgment (Doc. Nos. 38, 41, 48, 49), the Court will not address these arguments because the PLRA's language is mandatory—an inmate, such as Plaintiff, may not bring any action absent exhaustion of available administrative remedies. See Ross, 578 U.S. at 638. And, finally, because the Court has resolved Defendants' motions for summary judgment solely on the issue of administrative exhaustion, and not on any merits-related arguments, the Court will strike Defendants Sines, Murphy, Lain, Poorman, and Hoover's summary judgment documents that were filed provisionally under seal (Doc. Nos. 36, 46) because they relate to the merits-related arguments that the Court will not address. As a result, the Court will deny, as moot, Defendants Sines, Murphy, Lain, Poorman, and Hoover's pending motion to file those documents under seal. (Doc. No. 45.)

IV.     CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant the remaining Defendants' motions for summary judgment. (Doc. Nos. 38, 41.) In addition, the Court will strike Defendants Sines, Murphy, Lain, Poorman, and Hoover's summary judgment documents that were filed provisionally under seal (Doc. Nos. 36, 46), and the Court will deny, as moot, their pending motion to file those documents under seal (Doc. No. 45). An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania